# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

VAN E. LEWIS,                               )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )            No. 1:06-CV-56 CAS
                                            )
MICHAEL J. ASTRUE,[1]                       )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Van E. Lewis for a Period of Disability and Disability Insurance Benefits

under Title II of the Social Security Act, and Supplemental Security Income under Title XVI of the

Act. Plaintiff has filed a Brief in Support of Plaintiff's Complaint, and defendant has filed a Brief in

Support of the Answer.

## Procedural History

On October 13, 2004, plaintiff filed his application for benefits, claiming that he became

unable to work due to his disabling condition on December 30, 2002.[2] (Tr. 48-50). This claim was

---

[1]This case was originally filed against Jo Anne B. Barnhart, who was at that time
Commissioner of the Social Security Administration. On February 12, 2007, Michael J. Astrue
became the Commissioner of the SSA, and he hereby is substituted as the defendant in this action.
See Fed. R. Civ. P. 25(d)(1).

[2]Plaintiff previously filed applications for Disability Insurance Benefits and Supplemental
Security Income on June 3, 1998, and on October 20, 1998. (Tr. 10). These applications were
denied on June 30, 1998, and on October 20, 1998, and were not pursued further. (Id.). The
ALJ, therefore, properly found that no grounds existed to reopen these prior applications. (Id.)

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated December 30, 2005. (Tr. 19, 7-18). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on March 9, 2006. (Tr. 5, 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on November 3, 2005. (Tr. 159). Plaintiff was present and was represented by counsel. (Id.) The ALJ admitted a number of exhibits into the record. (Tr. 160).

The ALJ then examined plaintiff, who testified that he was fifty-nine years of age and completed the ninth or tenth grade. (Id.) Plaintiff stated that he dropped out of school because he was unable to read. (Id.) Plaintiff testified that he did not take special classes. (Id.) Plaintiff stated that he just never learned to read and none of his teachers ever asked him if he was able to read. (Tr. 160-61). Plaintiff testified that he was five feet, ten inches tall and weighed 200 pounds. (Tr. 161).

Plaintiff testified that he was not working at the time of the hearing. (Id.) Plaintiff stated that prior to the hearing he last worked two-and-a-half years ago for Fisher Screw Products. (Id.) Plaintiff testified that he made screws at this position. (Id.) Plaintiff stated that he worked for Fisher Screw Products for about two years. (Id.) Plaintiff testified that he left this position on December 30, 2002, because the company filed for bankruptcy. (Id.)

Plaintiff testified that he worked as an over-the-road truck driver prior to working for Fisher Screw Products. (Tr. 162). Plaintiff stated that he worked as a truck driver from 1984 to the time he left to work for Fisher Screw Products. (Id.)

Plaintiff testified that he stopped working as a truck driver due to his blood pressure, eye, and back problems. (Id.) Plaintiff stated that he still has his commercial driver's license (CDL). (Id.) Plaintiff testified that he owns his own truck, and that he decided to stop driving it. (Tr. 163). Plaintiff stated that he was not told by his doctors to stop working. (Id.) Plaintiff testified that he takes medication for his blood pressure, and that his blood pressure fluctuates. (Id.) Plaintiff stated that his high blood pressure has caused him to pass out. (Id.) Plaintiff testified that he decided to stop driving for safety reasons after he passed out. (Id.)

Plaintiff testified that he has been performing mechanic work all of his life. (Id.) Plaintiff stated that he is a self-learned mechanic, and that he began working on cars when he was sixteen. (Id.) Plaintiff testified that he worked as a mechanic only on the side as a hobby, although he worked at a Jaguar dealership in Florida on one occasion. (Id.) Plaintiff stated that he has a salvage yard at his home and people bring him vehicles to repair. (Id.) Plaintiff testified that he has stopped working on vehicles because he is unable to squat for long periods. (Id.)

Plaintiff testified that he was laid off at Fisher Screw Products three to six months before the company filed for bankruptcy. (Tr. 164). Plaintiff stated that he experienced back pain while working for Fisher Screw Products. (Id.)

Plaintiff testified that he suffers from back pain, high blood pressure, eye problems, ringing in his ears, and skin cancer. (Id.) Plaintiff stated that he was not seeing a doctor for his back pain at the time of the hearing but he was taking pain medication. (Id.) Plaintiff testified that he saw Dr.

M.J. Stevenson at the Kneibert Clinic for his back. (Tr. 164-65). Plaintiff stated that Dr. Stevenson is his primary care doctor and the only doctor he was seeing at the time of the hearing. (Tr. 165). Plaintiff testified that Dr. Stevenson told him that he should undergo an x-ray for his back but he did not do so because he has no insurance. (Id.) Plaintiff stated that Dr. Stevenson prescribed his blood pressure medication. (Id.) Plaintiff testified that his medical problems prevent him from bending, working, and seeing. (Id.) Plaintiff stated that his eyeglasses help, although his vision still is not good. (Id.)

Plaintiff testified that he saw a specialist in Poplar Bluff for the ringing in his ears, who referred him to another doctor. (Id.) Plaintiff stated that the doctor examined him but was unable to determine the cause of the ringing. (Tr. 166).

Plaintiff testified that he lives with a lady friend. (Id.) Plaintiff stated that his lady friend has a daughter and grandchildren, who occasionally stay with them. (Id.) Plaintiff testified that his lady friend works at Wal-Mart until 3:00 p.m. (Id.) Plaintiff stated that during the day while his lady friend is working, he watches television, answers the telephone, and goes outside to "piddle around." (Id.) Plaintiff testified that he does not help with vacuuming, sweeping, laundry, or grocery shopping. (Id.) Plaintiff stated that he tries to repair things such as lawn mowers. (Tr. 168). Plaintiff testified that he also tries to mow the lawn. (Id.) Plaintiff stated that he occasionally cooks. (Id.)

Plaintiff testified that he drives and that he drove himself to the hearing. (Id.) Plaintiff stated that his back hurts when he drives. (Id.) Plaintiff testified that he has friends whom he visits. (Id.) Plaintiff stated that he drives to friends' houses in Poplar Bluff to visit. (Tr. 169). Plaintiff testified that the farthest he drives is five miles outside Poplar Bluff, where he lives. (Id.)

Plaintiff testified that he takes medication for pain and for his blood pressure. (Tr. 170). Plaintiff stated that he did not know the names of his medications. (Id.) Plaintiff testified that his blood pressure is not controlled with medication. (Id.) Plaintiff stated that his blood pressure is usually either too low or too high. (Id.)

Plaintiff testified that he does not read newspapers or magazines because he is unable to read. (Id.) Plaintiff stated that he was able to work as a truck driver by looking for numbers on exit signs. (Id.) Plaintiff testified that he was required to keep a written log and he was able to do this by looking at a map and taking numbers from where he had been. (Id.)

Plaintiff's attorney then examined plaintiff, who described his back pain as a throbbing pain running down his back into his heels on both sides. (Tr. 171). Plaintiff testified that he has experienced this pain for a long time, although it has increased with age. (Id.) Plaintiff stated that he had the back pain when he was working as a truck driver. (Id.) Plaintiff testified that the pain has been constant the past two years. (Id.) Plaintiff rated his back pain as a seven on a scale of one to ten on average, and a ten at worst. (Tr. 172). Plaintiff testified that his back pain increases when he holds objects in front of his body. (Id.) Plaintiff stated that his pain also increases when he turns, bends, or squats. (Id.) Plaintiff testified that he does not have any trouble driving. (Id.)

Plaintiff testified that he takes pain medication, which provides some relief, but causes him to become dizzy if he takes too much. (Id.) Plaintiff stated that he has tried heating pads and ice packs to relieve his pain, but he cannot use these measures at work. (Id.)

Plaintiff testified that he can no longer work due to his pain. (Tr. 173). Plaintiff stated that the pain has increased with age and he can no longer tolerate the pain. (Id.) Plaintiff testified that his pain slows him down significantly so that it takes him all day to complete a task. (Id.) Plaintiff

stated that he does not know of any job that he could perform. (Id.) Plaintiff testified that he has applied for positions but no one has offered him a job due to his back impairment, poor vision, and illiteracy. (Id.)

## B. **Relevant Medical Records**

Plaintiff presented to the Kneibert Clinic on June 3, 2002, with complaints of neck stiffness, back pain, a cough, and congestion. (Tr. 134). Plaintiff underwent chest x-rays, which revealed chronic changes in the chest, but no acute process. (Tr. 137).

On July 10, 2002, plaintiff presented to the Kneibert Clinic complaining of difficulty breathing and pain between the left shoulder blade and his chest. (Tr. 132). Plaintiff was diagnosed with restrictive airway disease[3] and a non-healing skin lesion. (Tr. 133). He was prescribed Allegra[4] and Advair.[5] (Id.)

On March 31, 2003, plaintiff complained of high blood pressure, back problems, ears ringing, and sinus problems. (Tr. 91).

Plaintiff presented to the emergency room on July 10, 2004, with complaints of chest pain. (Tr. 106-07). Plaintiff was admitted to St. Francis Medical Center on July 10, 2004, for suspected

---

[3]Restrictive airway disease, or asthma, is an inflammatory disease of the lungs characterized by reversible (in most cases) airway obstruction. See Stedman's Medical Dictionary, 158 (27th Ed. 2000) ("Stedman's").

[4]Allegra is indicated for the treatment of seasonal allergic rhinitis. See Physician's Desk Reference, 706 (57th Ed. 2003) ("PDR").

[5]Advair is indicated for the treatment of asthma. See PDR at 1435.

acute myocardial infarction.[6] (Id.) It was noted that plaintiff had a history of hypertension[7] for which he no longer took any medication. (Tr. 106). Plaintiff's discharge diagnosis on July 11, 2004 was non-cardiac chest pain-rule out coronary artery disease,[8] history of recent left rib fractures, and right upper quadrant tenderness-rule out gallbladder disease. (Tr. 104). Plaintiff's discharge medications were aspirin, Pepcid,[9] Pravachol,[10] and Vicodin.[11] (Id.).

Plaintiff presented to the Kneibert Clinic on August 12 and 18, 2004, complaining of gallstones.[12] (Tr. 122). Kean D. Griffith, M.D. diagnosed plaintiff with gallstones, abdominal pain, hypertension, and basal cell carcinoma[13] of right superior neck. (Tr. 119, 145).

---

[6]Sudden insufficiency of arterial or venous blood supply of a segment of the heart muscle, usually as a result of occlusion of a coronary artery. See Stedman's at 894-95.

[7]High blood pressure. Stedman's at 855.

[8]Cardiac condition characterized by stenosis (narrowing) of the coronary arteries. See J. Stanley McQuade, Medical Information Systems for Lawyers, § 7:223 (1993).

[9]Pepcid is indicated for the relief of heartburn associated with acid indigestion and sour stomach. See PDR at 3535.

[10]Pravachol is indicated for the prevention of coronary heart disease. See PDR at 1103.

[11]Vicodin is indicated for the relief of moderate to moderately severe pain. See PDR at 509.

[12]A concretion in the gallbladder or a bile duct, composed chiefly of a mixture of cholesterol, calcium bilirubinate, and calcium carbonate, occasionally as a pure stone composed of just one of these substances. Stedman's at 724.

[13]A slow-growing, invasive, but usually non-metastasizing neoplasm recapitulating normal basal cells of the epidermis, most commonly arising in sun-damaged skin of the elderly and fair-skinned. Stedman's at 286.

Plaintiff underwent a laparoscopic cholecystectomy[14] on September 8, 2004, at the Poplar Bluff Regional Medical Center. (Tr. 152). Plaintiff also underwent an excisional biopsy of a right neck skin neoplasm. (Id.)

Plaintiff saw Dr. Griffith for a follow-up of his cholecystectomy on September 16, 2004. (Tr. 84). Dr. Griffith stated that the neck lesion returned as basal cell carcinoma completely excised and the gallbladder was benign. (Id.) Dr. Griffith indicated that he gave plaintiff wound care instructions and a weight lifting restriction. (Id.)

Plaintiff presented to the Kneibert Clinic on October 28, 2004, with complaints of a sore throat, cough, and chest pain. (Tr. 109). The assessment of M.J. Stevenson, D.O., was uncontrolled hypertension, status post cholecystectomy, and upper respiratory infection. (Tr. 110).

Plaintiff presented to Chul Kim, M.D., on December 1, 2004, for an examination at the request of the Commissioner. (Tr. 94-97). Plaintiff's chief complaints were listed as eye problem, blood pressure problem, heart problem, gallbladder problem, skin problem, back problem, and learning disorder. (Tr. 94). With regard to his eye problem, plaintiff reported that he sustained an injury to his right eye as a child and is only able to see some movement with the right eye. (Id.) Plaintiff indicated, however, that he has no problem driving as far as his vision is concerned. (Id.) With respect to his back problem, plaintiff reported that he was able to stand for ten minutes, lift fifty pounds, sit for thirty minutes, drive a vehicle for about an hour, and that he had no problem walking. (Tr. 95). Plaintiff reported that he could not learn much in school because of his problems reading and writing, and that he quit school when he was halfway through his sophomore year. (Id.)

---

[14]Minimally invasive surgical removal of the gallbladder. Stedman's at 337.

Plaintiff's medications were listed as Lisinopril[15] and Norvasc.[16] (Id.) Upon physical examination, plaintiff's visual acuity was 20/30 for the left eye with glasses. (Tr. 96). Plaintiff had some limited range of motion upon lateral flexion, extension, and rotation of the cervical spine. (Tr. 99). Plaintiff was able to bear full weight on the right leg and left leg, walk on his heels and toes, get on and off the examining table, and squat without significant problem. (Tr. 97). Dr. Kim's impression was blindness of the right eye; hypertension on medication, but not well-controlled, without significant end organ damage; history of chest pain; history of cholecystectomy for gallstones; history of skin cancer removal, currently he has multiple skin lesions on both forearms; chronic lower back pain; and learning disorder. (Id.)

Joan Singer, Ph.D. completed a Psychiatric Review Technique on December 8, 2004. (Tr. 62-75). Dr. Singer expressed the opinion that plaintiff has no medically determinable impairment. (Tr. 62).

Plaintiff presented to the Kneibert Clinic on August 22, 2005, with complaints of back pain and ringing in his ears. (Tr. 82). Plaintiff reported that the ringing in his ears had gotten worse since he was off his blood pressure medication. (Id.) Plaintiff also stated that his back hurts and the pain radiates beyond the knee. (Id.) Dr. Stevenson's impression was essential hypertension[17] and back pain. (Tr. 83). He refilled plaintiff's blood pressure medication and recommended that plaintiff undergo an MRI of the lumbar spine. (Id.) Dr. Stevenson indicated that plaintiff declined the MRI for insurance reasons. (Id.)

---

[15]Lisinopril is indicated for the treatment of hypertension. See PDR at 2070.

[16]Norvasc is indicated for the treatment of hypertension and angina. See PDR at 2619.

[17]Hypertension without known cause. Stedman's at 856.

# The ALJ's Determination

The ALJ made the following findings:

1.    The claimant meets the non-disability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act, and he is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial activity since the alleged onset of disability.

3.    The claimant has a combination of a visual impairment of his right eye, hypertension, left ventricular hypertrophy, possible ischemia, a mild restriction of his lungs, and previous skin cancer and myocardial infarction. This combination of impairments is severe.

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant's impairments preclude frequently lifting and carrying of more than 25 pounds and standing and walking more than six hours out of an eight-hour day. In addition, the claimant has limitations to his depth perception and field of vision that come with having only one functioning eye that has a vision of 20/30.

7.    The claimant has past relevant work as a maintenance worker, truck driver, and mechanic.

8.    The claimant's past relevant work as a maintenance worker is not precluded by his residual functional capacity (20 CFR § 404.1565).

9.    The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant [work] as a maintenance worker.

10.    The claimant did not sustain his burden of proving that he cannot perform his past relevant work.

11.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 16-17).

The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that, based on the application filed on October 13, 2004, the claimant is not entitled to a Period of Disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act.

(Tr. 18).

## Discussion

### A.    Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.   See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).   The decision of the Commissioner will be affirmed if substantial evidence in the record as a whole supports it.   See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).   Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).   If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.   See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).   The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.   See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).   "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."   Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).   The analysis required has been described as a "searching inquiry."   Id.

**B.      The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(a); 42 U.S.C. § 423(d)(1)(a). The claimant has the burden of proving that he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied.
See 20 C.F.R. §§ 404.1520, 416.920(b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.
 See 20 C.F.R §§ 404.1520(c), 416.920(c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If it does not, however, the evaluation proceeds to the next step, which

requires inquiry into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520(e), 416.920(e). If the claimant is able to perform the previous work, taking into consideration the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant is entitled to disability benefits only if he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants with mental impairments. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard document entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level, and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a(d), (d)(2), (e), 416.920a(d), (d)(2), (e); 65 F.R. 50746, 50758. Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity that is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## C.    Plaintiff's Claims

Plaintiff raises three claims on appeal of the decision of the Commissioner. Plaintiff first argues that the ALJ erred in determining that plaintiff was capable of performing his past relevant work. Plaintiff next argues that the ALJ erred in failing to develop the record with respect to a mental impairment. Plaintiff finally argues that the ALJ erred in discrediting plaintiff's subjective

complaints of pain and limitations.  The undersigned will discuss plaintiff's claims in turn, beginning with the ALJ's evaluation of plaintiff's mental impairment.

## 1.    __Mental Impairment__

Plaintiff argues that the ALJ erred in failing to develop the record with respect to a mental impairment.  Specifically, plaintiff contends that the ALJ erred in discrediting plaintiff's allegation of illiteracy.  Defendant contends that the ALJ properly considered plaintiff's mental impairment.

An ALJ has a duty to fully develop the record.  See Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981).  This inquiry is limited to whether the claimant was prejudiced or unfairly treated by the ALJ's development of the record.  See Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993).  A consultative examination may be ordered when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a claimant's] claim."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  It has been held to be reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary to make an informed decision.  See Haley v. Massanari, 258 F.3d 742, 749 (8th Cir. 2001).  However, an "ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1999) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994)).

Here, no crucial issue was left undeveloped.  Rather, there was sufficient evidence in the record for the ALJ to review in making his determination.  Plaintiff testified that he left high school in the ninth or tenth grade because he was unable to read. (Tr. 160).  Plaintiff also testified that he was never in special education classes.  Although Dr. Kim noted that plaintiff had a learning disorder, this statement appears to be based solely on plaintiff's report and not on any objective testing.  Dr.

Singer, the state agency psychiatrist, expressed the opinion that plaintiff had no medically determinable impairment, and that no further intellectual evaluation was indicated. (Tr. 62, 74). Further, plaintiff was able to obtain a CDL and work as a truck driver for many years despite his alleged inability to read. Plaintiff also testified that he was required to keep a written log book as a truck driver, and that he was able to do this by looking at a map and taking numbers from where he had been. (Tr. 170). As such, the record is not supportive of a mental impairment and the ALJ did not err in failing to further develop the record.

## 2. **Credibility Analysis**

Plaintiff argues that the ALJ erroneously found plaintiff's subjective complaints of pain and limitation not credible. Defendant contends that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully required objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage,

effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See also Burress, 141 F.3d at 880.

The court finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. "[T]he question is not whether [plaintiff] suffers any pain; it is whether [plaintiff] is fully credible when []he claims that [the pain] hurts so much that it prevents h[im] from engaging in h[is] prior work." Benksin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Thus, the relevant inquiry is whether plaintiff's complaints are credible when he complains of pain of a severity to prevent him from working.

In his opinion, the ALJ specifically cited the relevant Polaski factors. (Tr. 14). The ALJ then properly pointed out Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain. The ALJ first stated that the medical evidence does not support plaintiff's subjective complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ first noted that none of plaintiff's physicians have imposed any functional limitations on plaintiff. (Tr. 15). The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

The ALJ next stated that, although plaintiff alleges hypertension as an impairment, his medical records from a July 10, 2004 hospitalization indicate that plaintiff was not taking his hypertension medication. (Tr. 15, 106). The ALJ stated that plaintiff's failure to comply with a prescribed treatment intended to alleviate his symptoms was inconsistent with his claim of disability. (Tr. 15). Failure to follow a prescribed course of treatment may detract from a claimant's credibility. See O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003).

With regard to plaintiff's back pain, the ALJ stated that plaintiff's medical records do not document the presence of long-term and significant atrophy or loss of muscle tone as would be expected if plaintiff's back impairment were as severe as he alleges. (Tr. 15). Although atrophy and loss of muscle tone are not dispositive, they are relevant in determining the severity of plaintiff's impairments. The ALJ also accurately points out that plaintiff's trips to the doctor were relatively infrequent. (Id.). This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

The ALJ also noted that plaintiff failed to undergo an MRI, citing lack of insurance, although the record does not document that plaintiff was ever refused treatment due to insufficient funds. (Tr. 15). If a claimant is unable to follow a prescribed regimen of medication and therapy to combat his difficulties because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits. Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992). The fact that a claimant is under financial strain, however, is not determinative. Id. A claimant's alleged failure to seek treatment due to financial difficulties is not credible when the claimant did not attempt to obtain any low-cost medical treatment. Id. at 386-87. Here, as the ALJ points out, there is

nothing in the record to indicate that plaintiff was denied treatment due to lack of finances or that he attempted to obtain low-cost treatment.

The ALJ next discussed plaintiff's daily activities. (Tr. 15). He stated that plaintiff testified that he drives an automobile, visits with friends either by phone or in person, and performs yard work. (Id.) The ALJ also cited a letter contained in the record from plaintiff's friend, Mrs. Alita Browning, dated November 2, 2005, in which Mrs. Browning states that plaintiff helped her husband dig a ditch. (Tr. 52). Significant daily activities may be inconsistent with claims of disabling pain. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001). As such, the ALJ properly determined that plaintiff's ability to engage in all of these activities on a regular basis appears inconsistent with the inability to work.

The ALJ also discussed the fact that plaintiff was able to work with his impairments, and that he cited a business lay-off as the reason he stopped working. (Tr. 16, 164). The ALJ stated that it is a reasonable inference that plaintiff's impairments would not prevent the performance of that job, as it was being performed adequately at the time of the layoff despite a similar medical condition. (Tr. 16). The fact that the claimant worked successfully for a significant period of time with his impairments is inconsistent with a claim of disabling pain. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). Each and every Polaski factor, however, need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the ALJ's reasons for discrediting plaintiff's complaints of disabling pain are

sufficient, and his finding that plaintiff's complaints are not credible is supported by substantial evidence.

## 3.     **Past Relevant Work**

Finally, plaintiff argues that the ALJ erred in determining that plaintiff could perform his past relevant work.  Plaintiff contends that the ALJ erred in assessing plaintiff's residual functional capacity.  Defendant argues that the ALJ made proper residual functional capacity and Step Four determinations.

After properly assessing plaintiff's credibility, the ALJ made the following determination regarding plaintiff's residual functional capacity:

> [g]iving the claimant the benefit of the doubt, the claimant is found credible to the extent of and the claimant's residual functional capacity and limitations are found to be medium work.  The claimant's impairments preclude frequently lifting and carrying of more than 25 pounds, however, he could stand and walk at least six hours out of an eight-hour day, if not a full eight hours.  In addition, the claimant has limitations to his depth perception and field of vison that come with having only one functioning eye that has a vision of 20/30.  These limitations are not contradicted by any examining or treating physicians.

(Tr. 16).

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).  Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

The ALJ's residual functional capacity assessment is supported by the record as a whole. Notably, none of plaintiff's treating physicians imposed any functional limitations on plaintiff. Rather, the record reveals that plaintiff received little treatment for his various impairments, and the treatment plaintiff received was rather conservative.

Although plaintiff claimed that he had passed out due to his high blood pressure, there is no evidence of plaintiff passing out in his medical records. With regard to his back impairment, Dr. Kim performed a musculoskeletal examination and found no significant swelling, deformity, heat, or limitation of the range of motion in any major joint. (Tr. 97). Dr. Kim also noted that plaintiff was able to bear full weight on the right leg and left leg, walk on his heels and toes, get on and off the examining table, and squat without significant problem. (Id.) Although plaintiff has been diagnosed with a loss of vision in his right eye, he has had this impairment since childhood and has worked successfully with the impairment. Plaintiff was treated for chest pain in July 2004, but the pain was determined to be non-cardiac in origin. (Tr. 104-07). Finally, with respect to plaintiff's skin cancer, the record reveals that plaintiff underwent an excision of a right neck skin neoplasm in September 2004, and that Dr. Griffith subsequently noted that the basal cell carcinoma was completely excised. (Tr. 152-53, 84).

In sum, the objective medical record is consistent with the ability to perform a limited range of medium work. The record is not supportive of any greater restriction due to plaintiff's impairments. The ALJ's residual functional capacity is also consistent, in part, with plaintiff's own statements. Plaintiff reported to Dr. Kim that he has no problem driving as far as his vision is concerned, he has no problem walking, and that he could lift fifty pounds. (Tr. 94-95).

Plaintiff next argues that the ALJ erred in failing to make specific findings as to the physical and mental demands of plaintiff's past relevant work in comparison to his residual functional capacity. An ALJ has a duty to "fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." Sells v. Shalala, 48 F.3d 1044, 1046 (8th Cir. 1995) (quoting Nimick v. Secretary of Health and Human Serv., 887 F.2d 864, 866 (8th Cir. 1989)). An ALJ may properly describe the demands of a plaintiff's past relevant work by reference to job descriptions in the Dictionary of Occupational Titles (DOT). See Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). An ALJ may also properly describe the demands of a plaintiff's past relevant work by reference to plaintiff's own description of the actual duties of his past relevant work. See Wingert v. Bowen, 894 F.2d 296, 298-299 (8th Cir. 1990).

Contrary to plaintiff's arguments, the undersigned finds that the ALJ properly considered the demands of plaintiff's past relevant work and compared those demands with what plaintiff was capable of doing. In his opinion, the ALJ first assessed plaintiff's residual functional capacity and then made the following findings:

> [w]ith this residual functional capacity, the claimant could return to his past relevant light work as a maintenance worker as described by the claimant and as it is generally performed as described in the Dictionary of Occupational Titles. The claimant did not sustain his burden of proving that he cannot perform his past relevant work. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 16). Plaintiff testified at the hearing regarding the requirements of his past work. (Tr. 161-64). Plaintiff also testified that he left his last position due to a business layoff. (Tr. 164). Further, the ALJ cited the Dictionary of Occupational Titles. Thus, the ALJ properly determined that plaintiff was capable of performing his past work as a maintenance worker.

## **Conclusion**

Substantial evidence in the record as a whole supports the ALJ's finding that plaintiff is not disabled because the evidence of record does not support the presence of a disabling impairment.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f is **AFFIRMED**.

An appropriate judgment will accompany this order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ____24th____ day of September, 2007.